**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-20764-ALTMAN**

**EDWARD RAYMOND**,

*Plaintiff*,

*v.*

**LSM TRADING USA, LLC**, *et al.*,

*Defendants.*
________________________________/

## ORDER ON MOTION TO DISMISS

Edward Raymond, proceeding *pro se*, alleges that the Defendants—LSM Trading USA LLC, LSM Trading Pty Ltd., and Linda Margon—failed to compensate him for his employment, sabotaged various transactions he arranged on their behalf, and subjected him to defamatory statements. *See generally* Third Amended Complaint ("TAC") [ECF No. 40]. Raymond's TAC advances five claims: (1) Fraudulent Inducement (Count I); (2) Breach of Contract (Count II); (3) Unjust Enrichment (Count III); (4) Tortious Interference (Count IV); and (5) Defamation (Count V). *See id.* ¶¶ 27–42. Raymond claims that, "[a]s a direct result of [the] Defendants' conduct, [he] suffered substantial financial loss, damage to [his] professional reputation, and loss of future business opportunities." *Id.* ¶ 27. He seeks "compensatory damages exceeding $50,000,000," as well as "consequential damages, reputational damages, costs, and interest." *Id.* ¶¶ 43–44. The Defendants have moved to dismiss Raymond's TAC on several grounds. *See generally* Motion to Dismiss ("MTD") [ECF No. 41]. After careful review, we **GRANT** the Defendants' MTD.[1]

[1] The Defendants' MTD is fully briefed and ripe for adjudication. *See* Plaintiff's Response in Opposition to Defendants' MTD ("Response") [ECF No. 42].

## THE FACTS

In March 2024, Raymond was recruited by the Defendants "to serve as Compliance Director, Business Development Manager, and General Counsel for LSM Trading USA LLC and its affiliated entities." TAC ¶ 9. Raymond tells us that LSM Trading USA LLC is a "Wyoming limited liability company whose sole member is Linda Margon," and that "LSM Trading Pty Ltd. is the parent or affiliated Australian entity." *Id.* ¶¶ 3, 16. Both companies "conduct international commodities trading operations, including transactions involving gold and sugar." *Id.* ¶¶ 15–16. Linda Margon, an Australian individual, "exercised direct control over both entities." *Id.* ¶¶ 5, 17.

Raymond "performed extensive work" for LSM—including "[s]tructuring international commodities transactions," "[v]etting buyers and sellers," and "[d]rafting contracts and compliance documentation"—based on representations that "he would receive compensation of approximately $250,000 per year" and commissions up to "tens of millions of dollars per month" for "successful transactions." *Id.* ¶¶ 17–18. But, despite "repeatedly assur[ing] [him] that payment was forthcoming," the Defendants "refused to pay [Raymond] any salary or agreed compensation." *Id.* ¶¶ 20, 24. Raymond also "introduced Defendants to verified buyers and sellers in transactions involving billions of dollars in potential revenue," but the Defendants then "intentionally sabotaged multiple transactions through erratic demands, refusal to close verified deals, and interference with contractual relationships." *Id.* ¶¶ 21, 23.[2] The Defendants also defamed Raymond "by communicating false statements to third parties, including claims that [he] was paid when he was not, that he was negligent, and that he worked with scammers." *Id.* ¶ 25.[3]

[2] The TAC is unclear as to whether the "transactions involving billions of dollars in potential revenue" are the same ones the Defendants "intentionally sabotaged." TAC ¶¶ 21, 23.

[3] The TAC doesn't tell us which Defendant defamed Raymond or when.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that "leniency does not give a court license to serve as de facto counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

We previously dismissed Raymond's Amended Complaint [ECF No. 33-1] without prejudice and with leave to amend for lack of personal and subject-matter jurisdiction. *See* Order on Motion to Dismiss [ECF No. 39]. We therefore begin by addressing those two questions. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) ("Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute."); *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("[C]ourts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.").

### I. Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The "party bringing the claim," therefore, must first "establish[ ] federal subject matter jurisdiction" before a federal court can review a claim on its merits. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (cleaned up)). If a federal court "determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

"Congress granted federal courts jurisdiction over two general types of cases: cases that 'arise under' federal law and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (first quoting 28 U.S.C. § 1331; and then quoting 28 U.S.C. § 1332(a)). "Diversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Sweet Pea Marine, Ltd.*, 411 F.3d at 1247 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 n. 2 (1999)). "A limited liability company ('LLC') is considered 'a citizen of any state of which a member of the company is a citizen.' To

'sufficiently allege the citizenships of [an LLC], a party must list the citizenships of all the members[.]'" *Incitatus Real Est., LLC v. Lancelot Miami River, LLC*, 2024 WL 4016441, at *2 (S.D. Fla. Feb. 6, 2024) (Altman, J.) (quoting *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004)).

We previously dismissed Raymond's claims as to Defendant LSM Trading USA LLC for lack of subject-matter jurisdiction because he had failed to plead the citizenship of each member of the LLC and therefore couldn't establish complete diversity. *See* Order on Motion to Dismiss at 8 ("Raymond doesn't identify the members of LSM Trading USA LLC—he only alleges that 'LSM Trading USA LLC is a Wyoming LLC conducting business in Florida.' Because Raymond hasn't shown that he and [LSM Trading USA LLC] are completely diverse—and since he doesn't invoke our federal-question jurisdiction—we cannot exercise jurisdiction over his claims against LSM Trading USA LLC." (quoting Amended Complaint ¶ 5)). Raymond's TAC cures this defect by alleging that "Defendant LSM Trading USA LLC is a Wyoming limited liability company whose sole member is Linda Margon, a citizen of Australia domiciled abroad." TAC ¶ 3. LSM Trading USA LLC is therefore a citizen of Australia for purposes of diversity jurisdiction. *See Incitatus Real Est., LLC*, 2024 WL 4016441, at *2 ("A limited liability company ('LLC') is considered 'a citizen of any state of which a member of the company is a citizen.'" (quoting *Rolling Greens MHP, L.P.*, 374 F.3d at 1022)). Because Raymond alleges that he's a citizen of Florida, *see* TAC ¶ 2 ("Plaintiff Edward Raymond is a natural person domiciled in and a citizen of the State of Florida."), he's done enough to show complete diversity between the parties, *see* 28 U.S.C. § 1332(a)(2) (authorizing federal courts to exercise jurisdiction in civil cases, above the amount-in-controversy requirement, between citizens of one state and citizens of a foreign state). We may therefore exercise subject-matter jurisdiction over Raymond's claims against LSM Trading USA LLC.

## II. Personal Jurisdiction

"The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction . . . and specific jurisdiction." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023). "General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." *Fuld v. Pal. Liberation Org.*, 606 U.S. 1, 12 (2025) (cleaned up). "A court in such a forum may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid.* (cleaned up). "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "To exercise specific jurisdiction, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025) (cleaned up).

It's undisputed that all three Defendants are nonresidents and that they're therefore not subject to our general jurisdiction. *See* TAC ¶ 6 ("[A]ll Defendants are citizens of Australia."). If Raymond wants us to exercise personal jurisdiction over the Defendants, then, he must rely on the doctrine of *specific* personal jurisdiction. "[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022). *First*, we "determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute." *Ibid. Second*, we "decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Ibid.*

Here, Raymond seeks to establish personal jurisdiction over the Defendants under two subsections of Florida's long-arm statute: Florida Statute § 48.193(1)(a)(1), which relates to "carrying

on a business or business venture" or "having an office or agency," in Florida; and Florida Statute § 48.193(1)(a)(2), which encompasses "tortious act[s]" committed "within" Florida. *See* TAC ¶ 6 ("This Court has specific personal jurisdiction over all Defendants pursuant to Fla. Stat. § 48.193(1)(a)(1) and § 48.193(1)(a)(2)."). After careful review, we find that the Plaintiff has failed to establish personal jurisdiction under either subsection of Florida's long-arm statute.

**A. Subsection (1)(a)(1)**

Subsection (1)(a)(1) of Florida's long-arm statute allows plaintiffs to establish jurisdiction over nonresident defendants for causes of action arising from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." FLA. STAT. § 48.193(1)(a)(1). To establish that a defendant is "carrying on a business" under this provision of the long-arm statute, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "Factors relevant to whether a plaintiff has shown a defendant's general course of business activity include: (1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." *LM Media, LLC. v. Ello Ent. Grp., LLC*, 2026 WL 2066165, at *4 (S.D. Fla. July 17, 2026) (Altman, J.) (quoting *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (cleaned up)). "A business venture, on the other hand, 'can consist of a single project or transaction.'" *Stone v. Shafran*, 641 F. Supp. 3d 1344, 1358 (S.D. Fla. 2022) (Middlebrooks, J.) (quoting *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.*, 766 So. 2d 1163, 1165 (Fla. Dist. Ct. App. 2000)).

Raymond fails to establish that the Defendants were engaged in a business or business venture in Florida under § 48.193(1)(a)(1). Raymond says that the Defendants "conduct[ed] business in Florida by intentionally recruiting [him] while he was physically present in Miami . . . knowing and intending

that he would perform substantial work from Florida." TAC ¶ 8. But Raymond doesn't allege that the Defendants operated "an office in Florida," possessed "a license to do business in Florida," or "served" or "gleaned" revenue from Florida clients. *LM Media, LLC.*, 2026 WL 2066165, at *4 (quoting *Melgarejo, S.A.*, 537 F. App'x at 860). In fact, while Raymond claims to have arranged "transactions involving billions of dollars in *potential* revenue," *id.* ¶ 21 (emphasis added), he concedes that the Defendants "sabotaged" the deals he tried to coordinate and doesn't point to any transactions that were actually executed in or from Florida, *id.* ¶ 23.[4]

Raymond next claims that the Defendants conducted business in Florida because they "held daily operational meetings conducted via Zoom and WhatsApp with [him] while he was located in Florida and supervised his work through repeated Florida-directed communications by telephone, email, and electronic messaging." *Id.* ¶ 9.[5] But "telephonic and electronic communications . . . into Florida . . . cannot constitute 'conducting business' in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996) (finding that making telephone calls from Canada into Florida did not amount to "conducting business" in Florida)); *see also Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 556 (Fla. Dist. Ct. App. 2017) (finding that § 48.193(1)(a)(1) was not satisfied where a nonresident defendant engaged in a "large amount of email exchanges and telephone calls" with the plaintiff about their negotiations and business dealings); *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1322 (S.D. Fla. 2009) (Gold, J.) (collecting cases).

To be sure, Raymond alleges that the Defendants engaged in *some* business activities in Florida—for example, that Linda Margon "was in the process of purchasing" "a warehouse intended

[4] Raymond doesn't say whether he closed any business at all. Nor does he tell us how many transactions he arranged—or with whom.

[5] The TAC doesn't allege that the Defendants traveled to Florida or conducted any in-person meetings in the state.

for use in sugar trading operations" in Jupiter, Florida. TAC ¶ 21. But the TAC contains no information about what this conduct entailed, whether the purchase ultimately went through, or how it's in any way connected to his claims.[6] As a result, Raymond fails to establish "a direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity." *Doe (V.H.) v. Hyatt Hotels Corp.*, 2024 WL 3859882, at *1 (11th Cir. Aug. 19, 2024) (quotation marks omitted); *see also ibid.* ("Florida courts have interpreted the specific jurisdiction under Florida Statute § 48.193(1)(a)(1) to require 'connexity,' or 'a causal connection between the defendant's activities in Florida and the plaintiff's cause of action.'"). In any event, "occasional and insignificant business operations . . . [do] not establish the sort of 'general course of business activity' necessary for personal jurisdiction under Fla. Stat. § 48.193(1)(a)(1)." *Melgarejo*, 537 F. App'x at 860 (quoting *Future Tech. Today, Inc.*, 218 F.3d at 1249). Nor can conduct amount to a "business venture" under § 48.193(1)(a)(1) where, as here, there's no evidence that any transactions were consummated. *See Stonepeak Partners, LP*, 231 So. 3d at 557 (finding that the defendant was not engaged in a business venture under subsection (1)(a)(1) because the defendant "never consummated a transaction to purchase . . . assets or even entered into a contract for purchase" and "did not deal in any property in Florida but investigated the possibility of entering into such a transaction"). For these reasons, Raymond hasn't established personal jurisdiction under Subsection (1)(a)(1) of Florida's long-arm statute.

**B. Subsection (1)(a)(2)**

Raymond's argument under Subsection (1)(a)(2) fares no better. That subsection of Florida's long-arm statute confers personal jurisdiction over nonresident defendants for causes of action "arising from" the process of "[c]ommitting a tortious act within this state." FLA. STAT. §

[6] The TAC only says that "[the] Defendants directed [Raymond] to travel to Jupiter, Florida, to identify and secure [the] warehouse[.]" TAC ¶ 21.

48.193(1)(a)(2). A "tortious act" under this subsection doesn't require a defendant's physical presence in the state; the tortious act "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). "[B]ut for personal jurisdiction to exist, 'the cause of action must arise from the communications' and the plaintiff must have suffered an injury in Florida due to the out-of-state defendant's communications into Florida." *MX Advisors, Inc. v. Edge AJG, LLC*, 2025 WL 4670522, at *5 (S.D. Fla. Jan. 10, 2025) (Cannon, J.) (quoting *Wendt*, 822 So. at 1260). "Prior to determining whether such communications form the basis for personal jurisdiction under the long-arm statute, courts must determine, as a threshold question, whether the allegations of the complaint state a cause of action." *MX Advisors*, 2025 WL 4670522, at *5.

While Raymond advances claims for breach of contract and unjust enrichment, these aren't tortious acts under Florida law and thus cannot support our exercise of personal jurisdiction under § 48.193(1)(a)(2).[7] *See Duong v. DDG BIM Servs. LLC*, 2025 WL 2416478, at *6 (M.D. Fla. Aug. 21, 2025) (Mizelle, J.) (declining to "exercise personal jurisdiction over a breach of contract claim concerning non-resident parties" under § 48.193(1)(a)(2) because that would "not square with the claim-specific focus of the long-arm statute and the provisions concerning breach of contract claims" (citing *Piazenko v. Pier Marine Interiors GMBH*, 314 So. 3d 438, 443 (Fla. Dist. Ct. App. 2020))); *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1137 (M.D. Fla. 2012) (Steele, J.) (explaining that unjust enrichment is "not considered a 'tortious act' under Florida law" (citing *Gen. Dev. Corp. v. John H. Gossett Const. Co., Inc.*, 370 So. 2d

[7] Despite advancing a breach-of-contract claim, Raymond doesn't invoke a breach-of-contract theory of personal jurisdiction under Florida Statute § 48.193(7). *See* FLA. STAT. § 48.193(1)(a)(7) (conferring personal jurisdiction when a party "[b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this statute"). We won't refashion the personal-jurisdiction theory he advances in the TAC into something more viable. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

380 (Fla. Dist. Ct. App. 1979))); *Procacci v. Harllee*, 95 So. 3d 997, 999 (Fla. Dist. Ct. App. 2012) (observing that unjust enrichment "is a noncontractual obligation that is treated procedurally as if it were a contract" (quoting *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 (Fla. Dist. Ct. App. 2010))); *Countrywide Payroll & HR Sols., Inc. v. Fleet Pers. Corp.*, 2020 WL 13596540, at *5 (M.D. Fla. Feb. 21, 2020) (Mendoza, J.) ("[S]ection 48.193(1)(a)2 does not apply to unjust enrichment.").

Raymond does, however, advance three tort claims that *could* allow us to exercise specific personal jurisdiction under Subsection (1)(a)(2): "fraudulent inducement, defamation, and tortious interference." TAC ¶ 10. He maintains that the Defendants committed these tortious acts "through communications intentionally transmitted into Florida," and that "the brunt of the financial and reputational harm [was] felt by [him] in Florida." *Ibid.* Consistent with Florida law, we'll first decide whether each of these causes of action states a claim for relief *before* determining whether Raymond has sufficiently established that we may exercise personal jurisdiction over the Defendants.

In his Response, Raymond says that he hasn't waived "previously pled facts" and maintains that "the TAC supplements prior allegations, was not intended to abandon them, and should be read as part of a continuous narrative of misconduct." Response at 4. But that's wrong. "An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (quoting *Proctor & Gamble Def. Corp. v. Bean*, 146 F.2d 598, 601 n. 7 (5th Cir. 1945));[8] *see also Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019) ("[A]ny amendment must 'reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.'" (quoting S.D. FLA. L.R. 15.1)). We thus cannot consider factual

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

allegations Raymond included in prior complaints if he decided not to reallege those facts in the now-operative TAC.

**1) Fraudulent Inducement (Count I)**

"To state a claim for fraudulent inducement under Florida law, [the plaintiff's] complaint must allege sufficient facts showing that: (1) [the defendant] made a false statement concerning a material fact; (2) [the defendant] knew the misrepresentation was false; (3) [the defendant] intended the misrepresentation to induce [the plaintiff's] reliance; and (4) [the plaintiff] was injured by his reliance on the misrepresentation." *Azar v. Nat'l City Bank*, 382 F. App'x 880, 884 (11th Cir. 2010) (citations omitted). A promise to perform a future action may constitute a fraudulent misrepresentation if "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform[.]" *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001). For fraud claims, a plaintiff must allege facts that "comport with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *ZAGG Inc. v. Ichilevici*, 2024 WL 3874584, at *10 (S.D. Fla. Aug. 20, 2024) (Altman, J.). "Rule 9(b) requires a plaintiff alleging fraud to show: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud.'" *Med-Stop, Inc. v. Vandutch, Inc.*, 2025 WL 26731, at *8 (S.D. Fla. Jan. 3, 2025) (Altman, J.) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

Raymond claims that the Defendants made false statements of material fact when they "represented to [him] that he would receive compensation of approximately $250,000 per year, plus commissions," and "repeatedly assured [him] that payment was forthcoming," but ultimately "refused to pay [him] any salary or agreed compensation." TAC ¶¶ 17, 20, 24. Raymond further alleges that the

Defendants' representations "induc[ed] him to continue working without pay," and that he "suffered substantial financial loss" as a result. *Id.* ¶¶ 20, 27.

Raymond's fraudulent-inducement claim fails for (at least) two reasons. *First*, it's barred under the independent-tort doctrine, under which "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. Dist. Ct. App. 2020). In other words, a plaintiff must "plead a tortious action committed separate and apart from the breach of contract." *Perez v. Scottsdale Ins. Co.*, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.). Under Florida law, the independent-tort doctrine bars a claim for fraudulent inducement where "the Defendants' alleged fraud is inextricably intertwined with the Defendants' performance on the [c]ontract[.]" *Med-Stop*, 2025 WL 26731, at *6. Here, Raymond's fraudulent-inducement claim hinges on his allegation that the Defendants "knowingly made false representations of material fact regarding compensation and business intent." TAC ¶ 27. In other words, the Defendants' failure to pay him the salary he was allegedly due under the contract triggers his fraudulent-inducement claims. Because the alleged fraud is "inextricably intertwined with the Defendants' performance" on the employment contract, the claim is barred by the independent-tort doctrine. *Med-Stop, Inc.*, 2025 WL 26731, at *5.

*Second*, Raymond's factual allegations are insufficient to state a claim for fraudulent inducement. For one thing, Raymond fails to meet the heightened pleading requirements of Rule 9(b) because he doesn't identify "the time, place, and person responsible for" the alleged misrepresentations. FED. R. CIV. P. 9(b). For another, he doesn't allege that the Defendants *knew* the statements were false when they made them. To establish fraudulent intent, Raymond must allege facts which, if true, plausibly suggest that the Defendants had "no intention of performing" or "a positive intention not to perform" *either* when they initially promised to pay him *or* when they later reassured him that payment was forthcoming. *Mejia*, 781 So. 2d at 1177; *see also Aerokool Aviation Corp.*

*v. Dofflemeyer*, 2021 WL 12311287, at *3 (S.D. Fla. Aug. 4, 2021) (Graham, J.) (dismissing fraudulent-inducement counterclaims where there were "no allegations of fact indicating counter defendants made a material representation 'with no intention of performing or with a positive intention not to perform,' and the 'the record [was] devoid of indicia of fraudulent intent'" (quoting *King v. Bencie*, 2019 WL 630333 at *3 (M.D. Fla. Feb. 14, 2019) (Jung, J.))). But the TAC never advances these allegations. That the Defendants *ultimately* didn't compensate Raymond, "at most, evinces 'a mere promise not performed' that, without more, 'cannot form the basis of actionable fraud' under Florida law." *King v. Bencie*, 752 F. App'x 881, 884 (11th Cir. 2018) (quoting *Biscayne Inv. Grp., Ltd. v. Guar. Mgmt. Servs. Inc.*, 903 So. 2d 251, 253 (Fla. Dist. Ct. App. 2005)). Raymond thus fails to state a plausible fraudulent-inducement claim.

**2) Tortious Interference (Count IV)**

Under Florida law, the elements of tortious interference with a business relationship are: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1541 (11th Cir. 1993) (cleaned up). But "[a] tortious interference claim exists only against persons or entities who are not parties to the contractual relationship." *Bortell v. White Mountains Ins. Grp., Ltd.*, 2 So. 3d 1041, 1049 (Fla. Dist. Ct. App. 2009). "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 894 (11th Cir. 2025). "[A] defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed." *Volvo Aero Leasing, LLC v. VAS Aero Servs., LLC*, 268 So. 3d 785, 789–90 (Fla. Dist. Ct. App. 2019)

(quoting *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. Dist. Ct. App. 2009)).

Raymond's tortious-interference claim fails for several reasons. *First*, his assertions that he "had business relationships with third parties" and that the Defendants "intentionally interfered with those relationships" are conclusory. TAC ¶¶ 37, 38. To be sure, Raymond alleges that he "introduced [the] Defendants to verified buyers and sellers in transactions involving billions of dollars in potential revenue," and that the Defendants "sabotaged multiple transactions through erratic demands, refusal to close verified deals, and interference with contractual relationships." *Id.* ¶ 21, 23. But he doesn't identify these purported buyers and sellers or establish the existence of any business relationship under which he might have had legal rights—a deficiency that renders his claim insufficient. *See Bortell*, 2 So. 3d at 1048–49 (affirming the trial court's dismissal of a complaint alleging tortious interference where the plaintiff didn't "identify[ ] any actual clients with whom he had an agreement which in all likelihood would have been completed but for the defendants' interference").

*Second*, we agree with the Defendants that Raymond fails to state a claim for tortious interference because the Defendants "were [not] strangers to the alleged business relationships." MTD at 5. Raymond concedes that he was arranging the alleged transactions at the behest of—and for the benefit of—the Defendants by virtue of his role as "Compliance Director, Business Development Manager, and General Counsel for LSM Trading USA LLC and its affiliated entities." TAC ¶ 16; *see also id.* ¶¶ 17–18 ("Defendants represented to Plaintiff that he would receive compensation of approximately $250,000 per year, plus commissions that could reach tens of millions of dollars per month based on successful transactions. Relying on these representations, Plaintiff performed extensive work from Florida, including: a. Structuring international commodities transactions; b. Vetting buyers and sellers; c. Drafting contracts and compliance documentation; d. Coordinating communications between counter-parties[.]"). The Defendants were thus *not* strangers to Raymond's

business relationships with the buyers and sellers because, since Raymond was acting as their agent in arranging transactions with those parties, the Defendants had "a potential financial interest" and "supervisory interest" in those relationships. *Volvo Aero Leasing, LLC*, 268 So. 3d at 789–90; *see also Bortell*, 2 So. 3d at 1049 (holding that the plaintiff couldn't sue his principal for tortious interference based on the principal's misappropriation of his client list where the plaintiff "allege[d] that he acted as their agent" in selling insurance policies to those clients).

True, "a non-stranger's conduct still may be actionable in a tortious interference claim in two situations: (1) if improper means are employed, or (2) if the motive for the actions is purely malicious and not coupled with any legitimate competitive economic interest." *Al Rushaid*, 159 F.4th at 895–96 (cleaned up). "Improper methods include physical violence, misrepresentations, illegal conduct, and threats of illegal conduct." *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1214 (S.D. Fla. 2021) (Altman, J.) (quoting *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1280 n.9 (11th Cir. 2015) (cleaned up)). And malice involves conduct "committed with ill will, hatred, spite, or an evil intent"—*i.e.*, "the subjective intent to do wrong." *Gay v. Jupiter Island Compound, LLC*, 358 So. 3d 780, 789–90 (Fla. Dist. Ct. App. 2023) (cleaned up). Raymond alleges that the Defendants interfered in the alleged business relationships through "erratic demands, refusal to close verified deals, and interference with contractual relationships." TAC ¶ 23. He doesn't identify any specific contractual relationships or allege that the Defendants interfered with them through "physical violence, misrepresentations, illegal conduct, [or] threats of illegal conduct." *Shenzhen*, 574 F. Supp. 3d at 1214. That the Defendants impeded the consummation of a prospective business relationship doesn't, without more, constitute improper conduct. *See, e.g.*, *Taxinet, Corp. v. Leon*, 2018 WL 3405243, at *6 (S.D. Fla. July 12, 2018) (Moreno, J.) (dismissing tortious-interference claims where the plaintiff alleged that the defendant "encouraged the Mexican government officials not to contract" with the plaintiff but didn't "provide factual allegations that [the defendant] used improper means in that

regard"). "[E]ven if the plaintiff has an *existing*, terminable-at-will contract, the defendant's interference to protect its economic interests is privileged unless the plaintiff alleges 'a purely malicious motive' divorced from any 'legitimate competitive economic interest.'" *Duty Free Americas, Inc.*, 797 F.3d at 1280 (quoting *Heavener, Ogier Servs., Inc. v. R.W. Fla. Region, Inc.*, 418 So.2d 1074, 1077 (Fla. Dist. Ct. App. 1982)). Raymond doesn't allege that the Defendants had purely malicious motives for interfering in the alleged business or contractual relationships. In sum, the Defendants, as non-strangers to the business relationships, cannot be liable for tortious interference.

**3) Defamation (Count V)**

Under Florida law, "[d]efamation is 'the unprivileged publication of false statements which naturally and proximately result in injury to another.'" *Block v. Matesic*, 789 F. Supp. 3d 1131, 1154 (S.D. Fla. 2025) (Altman, J.) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. Dist. Ct. App. 1973)). In Florida, a defamation claim has five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Ibid.* (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). A statement is defamatory *per se* "if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Id.* at 1155. To state a plausible defamation claim, a Florida plaintiff must allege "certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which publication occurred." *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1309 (M.D. Fla. 2021) (Byron, J.) (cleaned up), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021).

Raymond hasn't pled a plausible defamation claim. He alleges only that the Defendants "defamed [him] by communicating false statements to third parties, including claims that [he] was paid

when he was not, that he was negligent, and that he worked with scammers." TAC ¶ 26. But he doesn't attach the statements or describe them in any detail—nor does he explain how these statements were false or defamatory. And, while Raymond alleges that the statements were "transmitted electronically into Florida," he fails to identify the specific Defendant who made the statements, when they were made, how they were transmitted, or to whom. *See Jacoby*, 537 F. Supp. 3d at 1309 ("In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." (cleaned up)). Because Raymond's threadbare assertions cannot plausibly allege the publication, falsity, or defamatory nature of the alleged statements, his defamation claim fails. *See Sullenberger v. City of Coral Gables*, 2025 WL 101703, at *37 (S.D. Fla. Jan. 15, 2025) (Altman, J.) (finding that the plaintiff "failed to state a plausible defamation claim because he [hadn't] attached the allegedly defamatory statements, described their contents, or told us when (or by whom) they were made"); *Malhotra v. Aggarwal*, 2019 WL 3425161, at *3 (S.D. Fla. July 30, 2019) (Gayles, J.) (finding that a defendant failed to state a defamation counterclaim because he didn't provide "an adequate description of the statements, when they were made, and to whom").

***

Since none of Raymond's tort causes of action state plausible claims for relief, he cannot establish personal jurisdiction over the Defendants under the tortious-act prong of Florida's long-arm statute. *See* FLA. STAT. § 48.193(1)(a)(2).

### C. The Corporate-Shield Doctrine

Even if Raymond could establish personal jurisdiction over the Defendants under Florida's long-arm statute, we agree with the Defendants that the corporate-shield doctrine would prevent us from exercising personal jurisdiction over Linda Margon because Raymond "does not allege that [he]

contracted with Linda Margon individually" or that she "committed a distinct tort outside her corporate role." MTD at 2.

The corporate-shield doctrine "does not allow long-arm jurisdiction over a corporate official, officer, or employee when he is acting 'on behalf of one's corporation[.]'" *Smith v. Panera Bread*, 2009 WL 10667191, *8 (S.D. Fla. Aug. 11, 2009) (Jordan, J.) (quoting *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). "In some circumstances, intentional misconduct by an individual defendant constitutes an exception to the corporate shield doctrine." *Guzman v. Cruise Yacht Op Co. Ltd*, 2023 WL 2572220, at *3 (S.D. Fla. Mar. 20, 2023) (Gayles, J.). "Florida courts, however, have generally imposed the additional requirement that the intentional tort must have been committed for the corporate officer's personal benefit, rather than merely for the benefit of the corporation." *VIS Holdings Corp. v. Cooper*, 2007 WL 9702900, at *6 (S.D. Fla. Dec. 11, 2007) (Altonaga, J.).

Raymond hasn't plausibly alleged that Margon committed an intentional tort for her *personal* benefit. Raymond offers only general allegations about the Defendants—claiming that "[the] Defendants failed and refused to pay [him] any salary or agreed compensation," "intentionally sabotaged multiple transactions," and "further defamed [him] by communicating false statements to third parties," TAC ¶¶ 23–25—but he doesn't say that Margon *personally* engaged in any of this alleged misconduct.

Raymond tries to cure this deficiency in his Response. *See* Response at 10 ("Margon personally directed [the] Plaintiff's work, personally participated in representations regarding compensation and role, and personally engaged in conduct giving rise to tort claims."). But a plaintiff cannot supplement a pleading in his response to a motion to dismiss. *See BFL Metal Prods. Co. LTD v. RDFN FUM Nat. Prods., Ltd.*, 2025 WL 958250, at *4 n.3 (S.D. Fla. Mar. 31, 2025) (Bloom, J.) ("[The] Plaintiff may not cure the deficiencies in its Complaint via its Response to the Motion."); *see also Walker v. BP Oil Pipeline*

*Co.*, 2012 WL 13006232, at *1 (S.D. Fla. July 9, 2012) (Williams, J.) ("[The plaintiff] may not cure the pleading deficiencies in his Complaint by adding new allegations in his Response.").

But here's the thing: Even if we accepted the new allegations Raymond advances about Margon in his Response, the corporate-shield doctrine would *still* bar his claim against her because he doesn't plausibly allege *either* that she was acting outside the scope of her corporate role *or* that she personally benefitted from the alleged misconduct. *See Guzman*, 2023 WL 2572220, at *3 (finding that the corporate-shield doctrine applied where allegations of intentional misconduct were "based on [the defendant's] acts committed solely in his capacity as an executive" and where there were "no allegations that [he] personally benefitted from" the misconduct).

* * *

Since Raymond has failed to establish either general or specific personal jurisdiction under §§ 48.193(1)(a)(1)–(2), we cannot exercise personal jurisdiction over the Defendants. We therefore **GRANT** the Defendants' MTD.

**III. Leave to Amend**

The Defendants seek dismissal of the TAC "with *prejudice*," MTD at 8 (emphasis added), while Raymond requests "leave to amend rather than dismissal with prejudice," Response at 12. Where a "more carefully drafted complaint might state a claim," a *pro se* plaintiff must be given at least one chance to amend. *Case v. Riley*, 270 F. App'x 908, 910 (11th Cir. 2008). We've already allowed Raymond to amend his complaint *twice*—once with the express purpose of curing jurisdictional deficiencies—and his TAC *still* fails to establish personal jurisdiction over the Defendants. Even so, we do think that Raymond *could* allege facts that may be sufficient to state a claim and which may place the Defendants within the ambit of Florida's long-arm statute. We'll therefore give Raymond **one** final chance to amend. *See Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should

give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice."). But we make clear here that this will be his *last chance* to correct the jurisdictional defects in his complaint. If Raymond's Fourth Amended Complaint continues to incorporate by reference factual allegations from prior pleadings, fails to identify the specific factual allegations supporting each count, or ignores any other pleading rules outlined in the Federal Rules of Civil Procedure, the Local Rules, or our orders in this case, we will dismiss this case *with prejudice*.

## CONCLUSION

After careful review, therefore, we **ORDER** and **ADJUDGE** as follows:

1. The Defendants' Motion to Dismiss [ECF No. 41] is **GRANTED**.
2. The Plaintiff's Third Amended Complaint [ECF No. 40] is **DISMISSED *without prejudice*** and with leave to amend.

**DONE AND ORDERED** in the Southern District of Florida on October 19, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record